**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**KIMBERLY WRIGHT,**

          **Plaintiff,**        **CIVIL ACTION NO. 13-cv-13191**

    **vs.**

                              **DISTRICT JUDGE PATRICK J. DUGGAN**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kimberly Wright, proceeding pro se in this matter, seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court is Defendant's Motion for Summary Judgment. (Docket no. 18.) Additionally, while Plaintiff has not filed a Motion for Summary Judgment or a Response to Defendant's Motion, she has filed a series of letters, which the undersigned will consider as Plaintiff's argument in support of her claim. (Docket no. 15.) The matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 5.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION:

This Court recommends that Defendant's Motion for Summary Judgment (docket no. 18) be GRANTED.

## II.    PROCEDURAL HISTORY:

Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of October 20, 2010, and an application for Disability Insurance Benefits with a protective filing date of October 19, 2010, alleging that she had been disabled since November 17, 2006, due to back pain, social anxiety, severe anxiety, depression, and bowel problems.  (*See* TR 10, 16.)  The Social Security Administration denied benefits.  (*See* TR 10.)  Plaintiff requested a *de novo* hearing, which was held on October 31, 2011, before Administrative Law Judge (ALJ) Martha Gasparovich, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work or, in the alternative, a significant number of jobs in the national economy.  (TR 10-22.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review.  The Court ordered that Plaintiff and Defendant file their respective Motions for Summary Judgment; Plaintiff sent a letter indicating that she "do[es not] know what that is" (docket no 15); Defendant filed the requested Motion (docket no. 18).

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff was 39 years old at the time of the administrative hearing and 34 years old at the time of alleged onset.  (*See* TR 33.)  She testified that she had a ninth-grade education and no GED.  (TR 33.)  Plaintiff told the ALJ that she had worked as an environmental specialist in a nursing home from 1999 through November 2006, at which time she stopped working due to depression and anxiety.  (TR 34-35.)  She stated that her anxiety was so bad that it caused her to have bowel movements, which she characterized as irritable bowel syndrome (IBS).  She also noted that she had

recently discovered that she had sciatic nerve damage, which had been causing pain on her left side for nearly a year.  (TR 35.)  At the time of the hearing, Plaintiff lived with her boyfriend but was generally alone from 2:30 p.m. until 11:00 p.m. or 1:00 a.m. while he was at work.  (TR 41-42.)

Plaintiff testified that she gets anxiety "really bad" when she gets around a lot of people, and she added that "for some reason it just causes [her] to automatically have a bowel movement."  (TR 37.)  She added that her heart would beat fast for about a half hour and that she would get sweaty.  (TR 44.)  And she told the ALJ that she was starting to have problems with her memory.  (TR 44-45.)  She stated, however, that when she is home, she "feel[s] safer," so she tries not to go anywhere.  (TR 37.)  She generally gets along with her kids and her boyfriend, and she told the ALJ that she did not have any problems focusing on a particular task.  (TR 45, 46.)  Plaintiff further testified that because of pain in her back and her leg, she could only stand for about 10 to 15 minutes, but that she had to "shift around" to do so, and that she could only sit for a half hour before she would get "sharp pains across [her] lower back and [her] leg."  (TR 39-40.)  She added that she could walk a couple of blocks before she would have to stop and that she could lift about five pounds before her back would begin to hurt.  (TR 40-41.)

Plaintiff testified that she had not received any recent medical care because she did not have insurance.  (TR 35.)  She told the ALJ that she had been to the emergency room in June of 2011 and learned that she "could have some slip (sic) discs."  (TR 36.)  She stated that the ER doctors had recommended an MRI, but she didn't want the bill to end up on her credit report.  (TR 36.)  She also told the ALJ that she had been seeing her doctor at Redford Urgent Care who had been treating her for pain, anxiety, and depression.  (TR 37, 38.)  She noted that her doctor had recommended a counselor for anxiety and depression, but she had not gone to see one.  (TR 37.)  Her doctor had, however, prescribed Vicodin for her back pain and Xanax for her anxiety; she also took Immodium

3

for her IBS.  Plaintiff told the ALJ that she had not originally taken the Vicodin because it was a narcotic, but she had begun taking her leftover pills for her leg pain.  And she noted that she only took the Xanax when she was going to go out somewhere.  (TR 39.)  Plaintiff also stated that while the hospital had recommended that she switch from Vicodin to Tramodol, she could not get it because it was a non-narcotic.  (TR 39.)  When the ALJ asked if she could afford the Tramodol, she stated that she did not know how much it cost.  (TR 39.)

With regard to her daily activities and home life, Plaintiff testified that she would clean her house frequently, but "you can only clean so much," so she spent a lot of time talking to her daughter and watching television.  (TR 41.)  She stated that she would do laundry, but her sons would help her carry the basket up and down the stairs.  (TR 41.)  She also noted that she did cooking for her family and her boyfriend without any difficulty.  (TR 42.)  In general, she testified, she would sleep three to four hours each night because of the pain in her leg, but she added that while she was a bit tired, she was generally "fine."  (TR 42-43.)

B.    **Medical Record**

Defendant asserts that "[t]he ALJ adequately presented . . . the medical evidence in this case" and does not set forth a recitation of the record.  (Docket no. 18 at 5.)  Plaintiff does not assert otherwise, and after conducting an independent review of the medical record, the undersigned agrees.  Therefore, the Court hereby incorporates by reference the recitation of the medical record as set forth in the ALJ's opinion.  (TR 16-19.)  The Court will include additional citations as necessary throughout this Report and Recommendation.

The undersigned acknowledges that Plaintiff's letter to the Court includes various references to her current treatment regimen, medications, and symptoms.  But in cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence

4

that was part of the record before the ALJ.  *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Further, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  Thus, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence on a showing of "good cause," 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001), but a plaintiff must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993).

Plaintiff has not demonstrated (or alleged) that the Secretary would have reached a different conclusion if presented with this evidence.  Additionally, the evidence that Plaintiff has provided to the Court appears to be evidence related to the period after the ALJ's decision. Therefore, while the undersigned is cognizant of Plaintiff's complaints, the Court cannot consider this evidence as part of its present review.

### C.    The Vocational Expert

After the VE testified that Plaintiff's past relevant work was light and unskilled and categorized under the DOT as a cleaner, the ALJ asked the VE to consider a hypothetical person of Plaintiff's age and education who could "stand and walk no more than six hours in an eight-hour day," could "lift no more than 20 pounds occasionally and ten pounds frequently," and who

"[w]ould be unable to push or pull with the lower extremities." (TR 48.) The ALJ added that this individual "[c]ould only squat, crawl, kneel, climb, balance, bend, or stoop occasionally[, w]ould be limited to simple, routine one to three-step tasks," and would require "no interaction with the public and only minimal interaction with coworkers, meaning less than 30% of the time." (TR 49.) Finally, the ALJ added that this individual "would need to have ready access to a restroom throughout the workday." (TR 49.) The VE testified that such an individual could perform Plaintiff's past work as a cleaner. (TR 49.)

The ALJ then asked the VE to assume that this person could only stand and walk two of eight hours in an eight-hour day and "could never squat, crawl, or kneel." (TR 49.) The VE testified that such an individual could perform work at the sedentary level, including "some assembly work," "some packaging," and "some visual inspection." (TR 49.) The ALJ then asked the VE to assume that the individual "was unable to interact at all with coworkers." (TR 49.) The VE testified that such a limitation would preclude all work, as would any limitation that would require an individual to be absent three times or more per month due to panic attacks. (TR 50.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2011; that Plaintiff had not engaged in substantial gainful activity since November 17, 2006; that she suffered from severe chronic back pain, chronic knee pain, morbid obesity, chronic anxiety disorder, and irritable bowel syndrome; and that she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 12-14.) After considering the record and Plaintiff's testimony, which it found was not wholly credible, the ALJ concluded that Plaintiff had the following RFC:

6

> [T]he claimant has the residual functional capacity to perform light work . . . except she requires the ability to stand and walk no more than 6 hours in an 8-hour day. She can lift no more than 20 pounds occasionally and 10 pounds frequently. She is restricted from pushing or pulling with the lower extremities. The claimant is limited to work that requires only occasional squatting, crawling, kneeling, climbing, balancing, bending, and stooping. In addition, she is limited to simple, routine, 1-3 step tasks, with no interaction with the public, and only minimal interaction with co-workers (less than 30% of the time). Furthermore, the claimant would need to have ready access to a restroom throughout the workday.

(TR 15-19.) Then, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a cleaner. (TR 19-20.) Alternatively, the ALJ found that Plaintiff could perform a substantial number of jobs in the national economy. (TR 20-21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from November 17, 2006, through the date of the ALJ's decision. (TR 22.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

7

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial

8

evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). As noted, Plaintiff has not filed a Motion in this matter. Defendant argues that the ALJ's decision is supported by substantial evidence. (*See* docket no. 18.) The Court will assume that Plaintiff is not challenging the ALJ's determination at Steps 1 or 2 because these findings were in Plaintiff's favor. Additionally, Plaintiff has presented no evidence to suggest that the ALJ's Step-3 determination was inappropriate. Therefore, the Court will confine its analysis to a review of the ALJ's Step 4 and Step 5 determinations.

1.      **The ALJ's Step-4 Finding; Plaintiff's RFC**

The ALJ began her discussion of Plaintiff's RFC by acknowledging Plaintiff's reported symptoms as set out through her testimony at the October 31, 2011 hearing; the ALJ's account closely resembles the Court's recitation of the same hearing as set forth herein.  (*See* TR 16.)  The ALJ then discounted Plaintiff's statements concerning her symptom because she found the Plaintiff not credible.  (TR 16.)

In support of her conclusion, the ALJ acknowledged that some of the medical evidence supported Plaintiff's statements.  (TR 16.)  Nevertheless, the ALJ noted the following:

- at an April 12, 2009 appointment where Plaintiff complained of abdominal pain and rectal bleeding, she "refused oral contrast and CT and left against medical advice" (TR 16);

- at a July 9, 2009 appointment where Plaintiff complained of pain in her left side and back, she "left before her medical examination/screening" (TR 17);

- Plaintiff's "treatment has been essentially routine and/or conservative" (TR 17);

- Plaintiff "never sought or received treatment from a specialist" (TR 17);

- Plaintiff's medical record lacks treatment for IBS (TR 17);

- although an independent consulting psychiatrist found that Plaintiff suffered from depression and anxiety, he also found that her prognosis was "fair," if she were "treated more accordingly" (TR 17-18);

- Plaintiff "has not been entirely compliant in taking prescribed medications" (TR 18-19);

- Plaintiff told a consultative examiner that she had an 11th Grade education and a GED while she told the ALJ that she had only completed 9th Grade (TR 19);

10

- Plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" (TR 19); and

- when receiving unemployment benefits from May 20, 2007, through March 21, 2009, Plaintiff represented to the State of Michigan that she was "available to perform suitable full-time work (TR 19 (citing Mich. Comp. Laws § 421.28(1)(a))).

With regard to her physical limitations, the ALJ noted that the record "does not contain a medical assessment of the claimant's physical [RFC] by a medical professional;" thus, he afforded great weight to Plaintiff's physical consultative examiner, Leonidas Rojas, M.D, who's report, the ALJ notes, is "generally consistent with . . . the [Plaintiff's RFC]." (TR 17, 19.)  With regard to her psychological limitations, the ALJ noted that Plaintiff had met with Dr. Leonard Balunas, Ph.D. (TR 18.)  The ALJ afforded Dr. Balunas's opinions "some weight" as he found Plaintiff "appears to [be] . . . somewhat less restricted than opined by Dr. Balunas, particularly with regard to activities of daily living."  (TR 18.)

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the basis for determining Plaintiff's credibility. SSR 96–7p.  Here, the ALJ found that Plaintiff's statements were not credible, and the Court can find no fault in the ALJ's analysis of Plaintiff's subjective complaints.[1]  Moreover, the ALJ appears to have properly weighed the medical and opinion evidence of record.  The Court has found no evidence to conflict with the ALJ's RFC

---

[1]As Plaintiff has not raised concerns over the ALJ's credibility determination, the Court will not conduct a full analysis of the same.  Nevertheless, the Court notes that the ALJ appears to have conducted a proper credibility analysis under 20 C.F.R. § 416.929(c)(2).

finding, let alone any reason to suggest that the ALJ's finding is not supported by substantial evidence.

### 2.    The ALJ's Step-5 Finding

In making his Step-5 finding, the ALJ relied on the testimony of the VE.  In a hypothetical question posed to the VE, an ALJ is required only to incorporate those limitations that he finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).   Here, the ALJ presented all of the limitations of the RFC in her hypothetical questions to the VE, and the VE testified that Plaintiff can perform her past relevant work.  (TR 49.)  Moreover, the VE testified that there are jobs available for a person with these limitations.  (TR 49.)  Plaintiff did not question the VE.  (TR 49.)  Plaintiff has not challenged the reliability of the VE's testimony or given any other reason to discount the ALJ's reliance on the VE's testimony regarding Plaintiff's ability to perform her past work or regarding the number of available jobs in the national economy.  Therefore, the ALJ's findings at step five are supported by substantial evidence.

## VI.    CONCLUSION

As noted, the undersigned is aware of Plaintiff's assertions in her letters to the Court. Plaintiff asserts that she is now taking her medication, that she is still in pain, that her conditions are getting worse, and that she would work if she could.  (*See* docket no. 15.)  Additionally, Plaintiff asserts that it is unfair to expect her to go through surgery and to expect her to perform her old job. (*Id.*)  But regardless of Plaintiff's pleas for assistance, the Court cannot engage in an independent review of the ALJ's decision.  Thus, for the reasons stated herein, Defendant's Motion for Summary Judgment (docket no. 18) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 30, 2014             s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Kimberly Wright and Counsel of Record on this date.

Dated: June 30, 2014             s/ Lisa C. Bartlett
                                 Case Manager

13